Linda Tirelli, Esq.
Counsel For Debtor / Respondent
One North Lexington AVEUNE, 11th Floor
White Plains, New York 10601
PH(914) 946-0860

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK
### WHITE PLAINS DIVISION

-----------------------------------------------------------X

IN RE:

PRISCILLA C. TAYLOR

                                                            **CHAPTER 13**
                                                            **CASE NO: 10-22652(RDD)**

      **Debtor.**

-----------------------------------------------------------X

HSBC BANK USA, NATIONAL
ASSOCIATION,
 AS TRUSTEE FOR ACE
SECURITIES CORP.
HOME EQUITY LOAN TRUST, SERIES 2006-
FM2 ASSET BACKED PASS-THROUGH
CERTIFICATES "BY AND THROUGH ITS
SERVICER, BAC HOME LOANS
SERVICING, LP,"

      **Movant.**

      **vs.**

PRISCILLA TAYLOR,

      **Respondent,**

                                                            **DEBTOR /RESPONDENT'S**
                                                            **OPPOSITION TO MOTION FOR**
                                                            **SUMMARY JUDGMENT**

-------------------------------------------------------- X

## RESPONDENT'S STATEMENT IN
## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Come now, Respondent, Chapter 13 Debtor Priscilla Taylor, (HEREINAFTER "Respondent" or
"Debtor") pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the
Federal Rules of Civil Procedure and Local Bankruptcy Rule 7056.1, and move the Court to
DENY purported creditor/ Movant/ Movant(s)"HSBC bank USA, National Association, As
Trustee For ACE Securities Corp. Home Equity Loan Trust, Series 2006-FM2 Asset Backed
Pass-Through Certificates By And Through Its Servicer 'BAC Home Loans Servicing, LP' "
Motion for Summary Judgment Doc. No. 42 Filed on May 6, 2011 as against Debtor Priscilla

Taylor's Objection to Proof of Claim  Chapter 13 Case 10-22652(rdd) Doc 20 Filed on October 24, 2011.  In support of the Debtor's Opposition to Motion for Relief from Stay, Debtor would respectfully show the Court as follows:

## I.    Standard on Summary Judgment

There are genuine issues of material fact throughout the record regarding the Proof of Claim

filed by "HSBC Bank USA, NA as Trustee ISAOA" and its ability to demonstrate standing  and

reconcile documents the Debtor maintains are bogus and constitute fraud on the court.  As

demonstrated herein below the claimant in the instant case is not the same claimant who filed

and was paid for three years on a proof of claim in the prior bankruptcy filed by the debtor's

husband, Mr. Taylor.  In fact, the movant claims now that it owns and holds the Debtor's

Mortgage Loan since October 30, 2006.  This is contradicted by a proof of claim filed on April

27, 2007 by a different creditor claiming to own the same loan, namely Countrywide Home

Loans Inc. and/or Fremont Investment and Loans c/o Countrywide Home Loans Inc., in a prior

related bankruptcy case filed by the debtor's husband, Kevin Taylor Case Number 07-22223.

At this juncture the debtor avers that discovery is not complete, the motion for summary

judgment is premature and because material facts remain in dispute, the movant is not entitled to

summary judgment.

By way of standard, the Court shall grant summary judgment under Fed. R .Civ. P. 56(a),  if the

movant shows that there is no genuine dispute as to any material fact and it is entitled to

judgment as a matter of law. Subject to Fed. R. Civ. P. 56(c)(2)-(4) and 56(d)-(e), a party

asserting that a fact cannot be, or is, genuinely disputed must support the assertion by (a) citing

to particular parts of the record, including depositions, documents, electronically stored

information, affidavits, or declarations, stipulations (including those made only for purposes of

the motion), admissions, interrogatory answers, or other materials, or (b) by showing that the

record does not establish the absence, or presence, as the case may be, of a genuine dispute. Fed.

R. Civ. P. 56(c)(1). The movant bears the initial burden to satisfy each material element of its claim or defense. Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004); Isaac v. City of New York, 701 F. Supp.2d 477, 485 (S.D.N.Y. 2010), aff'd 271 Fed. Appx. 60 (2d Cir. 2008).

Upon such a showing, the nonmoving party must provide evidence of a genuine issue of material fact to successfully oppose the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Facts are material if they "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II  Procedural and Factual History

The Debtor and her husband, Mr. Kevin Taylor (collectively the "Taylors") did execute a Mortgage and a Note in favor of Fremont Investment and Loan on May 30, 2006 in the amount of $378,000.00 for the purchase of their primary residence located at 315 McClellan Avenue, Mt. Vernon, NY 10553( hereinafter the "Mortgage Loan").  A copy of the Mortgage and Note signed by the Taylors is attached hereto as **Exhibit A**.  Subsequent to the mortgage loan, TWO (2) bankruptcy cases were filed, namely In re Kevin Taylor case number 07-22223(ahs/rdd) and the instant case  In re Priscilla Taylor10-22652(rdd) , both cases be considered in order for the court to view the documents and evidence presented by both parties in the context of the totality of the circumstances.

The Debtor's Priscilla Taylor's  spouse, Kevin B. Taylor, *acting pro se*, (hereinafter "Mr. Taylor" or "Debtor's Spouse") with this court on March 12, 2007, case number 07-22223(ash/rdd)[1] (hereinafter the "2007 Bankruptcy" or "Mr. Taylor's Bankruptcy").  A copy of Mr. Taylor's

---

[1] The case Number 07-22223 started with the Honorable Judge Adalai S. Hardin ( "ASH") and was subsequently transferred to the Honorable Judge Robert D. Drain("RDD") due to the retirement of Judge Hardin.

2007 Chapter 13 petition is attached hereto as **Exhibit B** and appears as Document Number 1 on

the Court's ECF system for case number 07-22223(ahs/rdd).

On April 27, 2007, a secured claim was filed in said 2007 Bankruptcy case by claimant

"Countrywide Home Loans, Inc." (hereinafter the "Countrywide Home Loans Inc. 2007 Claim" ).

Said claim is based on an alleged mortgage and note pertaining to the debtor's primary residence

located at 315 McClellan Avenue, Mount Vernon, New York.  A copy of the "Countrywide

Home Loans Inc. 2007 Claim"  as filed in case number 07-22223 is attached hereto as **Exhibit C**

and appears as Claim Number 5-1 on the Court's ECF Claims Register.

On May 14, 2007 an Objection to confirmation of debtor's proposed Chapter 13 Plan was filed

by Attorney Lisa Gordon[2] on behalf of "Fremont Investment & Loan c/o Countrywide Home

Loans, Inc."  A copy of said 2007 Objection to Confirmation of Plan is attached hereto as

**Exhibit D** and appears on the court's ECF Docket as Doc. No. 11 in case 07-22223(ash/rdd).

On May 31, 2007, Attorney Lisa Gordon filed a letter on behalf of "Fremont Investment & Loan

c/o Countrywide Home Loans, Inc." withdrawing said objection to confirmation. (hereinafter

"the May 31, 2007 Letter")  Said letter reads in relevant part as follows:

> "This office represents Fremont Investment & Loan c/o Countrywide Home
> Loans, Inc., a secured creditor of the above referenced debtor. Please be advised
> that **Fremont Investment hereby withdraws its objection** to confirmation of the
> debtor's Chapter 13 plan, in light of the amended plan, filed by the debtors on
> May 25, 2006 **which plan provides for payment in full of Fremont
> Investment's arrears." (Emphasis added)**

---

[2] According to the appearances of counsel filed in Mr. Taylor's 2007 Bankruptcy case, both Attorney Lisa Gordon and Attorney Peter Corey of the firm "Eschen, Frenkel, & Weisman, LLP, 20 West Main Street, Bay Shore, NY 11706" filed appearances on behalf of "Fremont Investment & Loan c/o Countrywide Home Loans, Inc.".  Based upon information and belief, said firm is the predecessor of the present day firm "Frenkel Lambert Weiss Weissman & Gordon, LLP" located at 20 West Main Street, Bayshore, NY 11706 of which Ms. Gordon is now a partner and the <u>same</u> firm which filed the proof of claim at issue in the instant case.

A copy of the May 31, 2007 letter is attached hereto as **Exhibit E** and appears on the court's ECF Docket as Doc. No. 16.

On June 14, 2007 the Hon. Judge Adalai Hardin issued an order confirming Mr. Taylor's Chapter 13 plan, as amended, pertaining to the 2007 Bankruptcy. (see ECF Doc. No. 17 in case number 07-22223). On August 30, 2007 a post-confirmation Motion for Relief from Stay was filed on behalf of "Fremont Investment & Loan c/o Countrywide Home Loans, Inc." (hereinafter the "Fremont") A copy of the Motion for Relief from Stay filed on behalf of Fremont is attached hereto as **Exhibit F** and appears as Doc. No. 21 on the Court's ECF system in case number 07-22223(ash/rdd).

On October 23, 2007, the court issued a conditional order consented to by the debtor Mr. Taylor and purported creditor, Fremont. A copy of the Consent Order is attached hereto as **Exhibit G** and appears on the court's ECF docket as Doc. No. 25 in case number 07-22223(ash/rdd). Said consent order required, in part, Mr. Taylor to pay legal fee in the amount of $700.00.

On February 5, 2010, the debtor, Mr. Kevin Taylor filed a Motion to Voluntarily Dismiss his Chapter 13 Bankruptcy Case, stating in part that the debtor had made his creditor, Countrywide Home Loans, Inc. "whole." (see Case # 07-22223 ECF Doc No. 34) Said Motion to dismiss was not contested and subsequent order granting dismissal was signed and entered by the Honorable Judge Robert D. Drain on February 24, 2010.    (see Case # 07-22223 ECF Doc No. 35).

On April 22, 2010, Mr. Jeffrey Sapir, Chapter 13 Trustee filed a Final Report and Account of the administration of the estate pursuant to 11 U.S.C. § 1302(b)(1) indicating payment to secured creditor "Countrywide Financial." A copy of Mr. Sapir's report is attached hereto as **Exhibit H** and is filed on the court's ECF Docket as Document No. 37 in case number 07-22223(rdd). Mr. Taylor's bankruptcy case closed on April 24, 2010.

At no time during Mr. Taylor's chapter 13 bankruptcy which persisted for more than three(3)

years from commencement on March 12, 2007 through closing on April 24, 2010 did the

purported creditors or parties "HSBC Bank USA, NA as Trustee ISAOA", "HSBC Bank USA,

National Association, As Trustee For Ace Securities Corp. Home Equity Loan Trust, Series

2006-FM2 Asset Backed Pass-Through Certificates" or "BAC Home Loans Servicing LP"

appear, file pleadings to substitute as creditor, or otherwise file any claim or pleading whatsoever.

This is interesting in light of the fact that Movant in the instant case claims that the Taylor's loan

was acquired and has been owned by "HSBC Bank USA, National Association, As Trustee For

Ace Securities Corp. Home Equity Loan Trust, Series 2006-FM2 Asset Backed Pass-Through

Certificates" since 2006.  (see Movant's Statement of Facts not in dispute  Copies of the entire

ECF Document History Report and ECF Docket Report for case number 07-22223(rdd) are

attached hereto collectively as **Exhibit I**.

On April 2, 2010, prior to the closing of Mr. Taylor's Chapter 13 Bankruptcy case, the debtor

Priscilla Taylor, pro se[3], filed an individual chapter 13 bankruptcy petition, the instant case

which was assigned case number 10-22652(rdd).  Said petition at Schedule D identifies and

indicates a disputed secured debt in the amount of $19017.55 and disputed creditor "Bank of

America, PO Box 5170, Simi Valley, CA 93062-5120".  A copy of schedule D of Debtor's

petition filed the instant case is attached hereto as **Exhibit J.**

On August 11, 2010 Attorney Roxanne Jones of the law firm of "Frenkel Lambert Weiss

Weissman & Gordon, LLP" located at 20 West Main Street, Bayshore, NY 11706  filed a proof

of claim identifying a secured creditor as "HSBC Bank USA, NA as Trustee ISAOA"(hereinafter

"HSBC").  A copy of the HSBC claim is attached hereto as **Exhibit K** and appears on the court's

---

[3] The court should know for clarification purposes, the instant debtor, Priscilla Taylor, filed the instant case with
the assistance of a non-attorney bankruptcy preparer who subsequently passed away.  The court suggested the
debtor seek legal counsel and the undersigned filed an appearance on behalf of the debtor on August 3, 2010.

ECF Claims Register as Claim No. 7-1. Said proof of claim provides, an unendorsed note, a mortgage and a curious assignment of mortgage which purports to assign the debtor's note and mortgage from Assignor "Mortgage Electronic Registration Systems, Inc. solely as nominee for Fremont Investment and Loan" to Assignee, "HSBC Bank USA, National Association, As Trustee For ACE Securities Corp. Home Equity Loan Trust, Series 2006-FM2 Asset Backed Pass-Through Certificates" dated July 21, 2010 and executed by Jennifer Schnaufer as "Assistant Vice President , Attorney  in Fact Pursuant to Power of Attorney or As Authorized Agent pursuant to Board of Resolutions and/or Appointment" on behalf of "Mortgage Electronic Registration Systems, Inc. solely as nominee for Fremont Investment and Loan." [4]  To date, nothing to evidence Ms. Schnaufer's authority to execute an assignment of mortgage has been provided by the creditor.  A copy of the purported Assignment of Mortgage is attached hereto as **Exhibit L**.  The court should know that the first time the entity "HSBC Bank USA, National Association, As Trustee For ACE Securities Corp. Home Equity Loan Trust, Series 2006-FM2 Asset Backed Pass-Through Certificates" (hereinafter the "Trust") is identified to the debtor is in the context of the purported Assignment of Mortgage.  The court may also take judicial notice that nowhere in the proof of claim is the entity "BAC Home Loans Servicing LP" identified as a party to this claim in the instant bankruptcy case.

The undersigned served a letter dated August 12, 2010 on Attorney Roxanne Jones requesting additional information regarding the claim and outlining discrepancies,  via certified mail, return receipt requested.  When the letter remained unanswered for a month, the undersigned certified service of the same along with a copy of the August 12, 2010 letter by posting the same on the

---

[4] The copurt should note that there is no mention of "successors or assigns" of Fremont Investment and Loan anywhere in the purported Assignment of Mortgage.

court's ECF system which appears as Document Number 15. To date, the letter addressed to Ms. Jones remains unanswered and a copy is attached hereto as **Exhibit M**.

On October 24, 2010 the debtor filed a Motion Objecting to Claims which appears on the Court's ECF docket as Document Number 20.[5]

On December 8, 2010, a response to debtor's Motion Objecting to Claims was filed by the Trust by and through its servicer , BAC. Said response together with exhibits appears as Document Number 25 on the Court's ECF System.

At a hearing on January 19, 2011, the debtor through counsel advised the court that she served a Notice of Deposition and Request for Production of Documents on the claimant. At the direction of the court, the Debtor did not pursue the deposition until at least 30 days had passed. On March 23, 2011, the undersigned filed a copy of the Notice of Deposition on the court's ECF System together with proof of service which appears as Doc. No. 34 on the court's ECF System and is attached hereto as **Exhibit N**. During this time, at the invite of opposing counsel, the Debtor submitted a settlement proposal. To Date, no response was received, only a "suggestion" that the Debtor submit to loss mitigation. In short, purporting to be engaged in settlement negotiations was a rope-a-dope maneuver to stall discovery.

To date, no depositions have been conducted in this case despite the undisputed service of notice of deposition upon HSBC and no Motion for Protective Order presented. On May 6, 2011 after requisite pre-motion conference, a Motion for Summary Judgment was filed in the instant case,(ECF Doc No. 42) the pending motion to which the debtor is hereby opposing by way of this response.

---

[5] Due to the voluminous nature of Debtor's Motion Objecting to Claims together with exhibits, weighing more than 4 lbs., the debtor does not attach a copy of the same herewith but refers the reader to the objection as filed which is document number 20 on the Court's ECF system.

### III THE COURT SHOULD DENY THE PENDING MOTION FOR SUMMARY JUDGMENT BECAUSE IT IS BROUGHT BY A NON-PARTY WHO LACKS STANDING TO INVOKE THE JURISDICTION OF THIS COURT

BAC HOME LOANS SERVICING LP'S STANDING AS A PARTY IN INTEREST OR AS AN AGENT OF A PARTY IN INTEREST TO BE BEFORE THIS COURT IS A THRESHOLD ISSUE WHICH MUST BE OVERCOME BY THE MOVANT AND WHICH REMAINS A MATERIAL ISSUE OF FACT

This summary judgment motion is brought by a non-party BAC as servicer to the Trust, neither of which which is identified as a party to the proof of claim no. 6-1 without any proof of agency between the parties ( ie., BAC, HSBC and the Trust) and therefore BAC lacks standing to insert itself and move for summary judgment in the contested matter which remains between the debtor and HSBC.

> FRBP 9014 (c) "Application of Part VII Rules" provides that "Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply....7056..."
> FRBP 7056 "Summary Judgment" **A party** may move for summary judgment...(Emphasis Added)

The instant Motion for Summary Judgment is bought by a non party, BAC with no cognizable claim or interest in the underlying contested matter. The Debtor commenced a contested matter by way of Motion Objecting to Proof of Claim as filed by "HSBC" to date the <u>only</u> parties to the underlying contested matter are HSBC and the Debtor.

For reasons which remain unclear, the instant Motion for Relief From Stay was filed by BAC under the guise of "servicer to" an entity claiming to own the debtor's loan, namely the Trust, despite a proof of claim which does not identify BAC in any capacity.[6]  The debtor raised this issue previously when BAC Home Loans Servicing LP submitted a proposed order pertaining to the Objection to Proof of Claim naming itself a creditor.  This court after considering the

---

[6] The fact that the purported servicer is not named as a claimant nor identifies on the proof of claim gives rise to the question of exactly how would the Federal Trade Commission monitor this or any loan purportedly serviced by BAC Home Loans Servicing to ensure compliance with the consent judgment order entered on June 10, 2010. ( see Tirelli Affidavit attached to ECF Doc. No. 50)

Debtor's competing proposed Order, entered an Order without naming BAC Home Loans

Servicing LP as a creditor.  The court's order is attached hereto as **Exhibit O** and appears on the

court's ECF docket as Document No. 32.  To date the only servicing agreement produced by

opposing counsel, namely the Pooling and Servicing Agreement to the ACE Securities Corp.

Home Equity Loan Trust, Series 2006-FM2 Asset Backed Pass-Through Certificates, **does not**

**identify BAC Home Loans Servicing LP as the servicer** to the securitized trust claiming to

own the debtor's loan.  The record is also absent any statement or cognizable claim of damages

or interest in the outcome of Debtor's Motion Objecting to Claims that would be suffered by

BAC should the Debtor prevail on the remaining issues outlined in the pending contested matter.

Moreover, the two affidavits submitted by BAC by Tala Renzai and Devra Lindgren do not

identify any interest of BAC nor do either affiant attest to the status of BAC as an agent to

named party HSBCor the Trust.  In fact while Devra Lindgren has gone through great lengths to

explain the metamorphosis of Countrywide to Red Oak to Bank of America, Ms. Lindgren never

attests or documents exactly *what assets were* transferred between the parties.  More importantly,

at no time does Ms. Lindgren testify that the servicing rights to the debtor's loan was part of the

series of mergers.  In the very recent opinion of In re Veal Case No. AZ 10-10 56, U.S.

Bankruptcy Appellate Panel Of The Ninth Circuit (Decided June 10, 2011) this precise issue was

one of the issues at bar.

In Veal, the Bankruptcy Appellate Panel of the Ninth circuit upon reviewing the record

determined purported servicer, American Home Mortgage Servicing Inc., "AHMSI" failed to

show evidence of agency or right to enforce a mortgage note despite the stated objection of the

debtor.   In Veal the court notes that the pertinent pooling and servicing agreement identified

Option One as the servicer, not AHMSI, the party asserting servicing rights and remanded the

case back to the bankruptcy court for further determination:

> "The PSA did not, however, identify AHMSI in any capacity, including its
> alleged role as successor servicer or subservicer of the Veal Loan. The PSA is
> similarly unhelpful as to the current holder of the Note." Veal pg. 8 Foot Note 5

In the instant case, exactly as in Veal, the pooling and servicing agreement does not identify

BAC as the servicer.  BAC's self serving claim of being the servicer to the trust is not enough to

prove agency.  BAC has no legal or factual basis whatsoever to bring the instant motion or

otherwise insert itself in the debtor's bankruptcy case.

In the instant case, BAC is not mentioned in Debtor's Objection to Claim because it was not

identified as a servicer or in any capacity in the proof of claim #6-1.  The Debtor raised the issue

of BAC's lack of standing with the court in relation to the submission of a proposed order by

BAC Home Loan Servicing LP in a letter dated  February 7, 2011 which appears as ECF Doc

Number 29. (see February 7, 2011 Letter page 2, copy attached as **Exhibit P**) Opposing counsel

responded with a letter to the court dated February 8, 2011 making the mere assertion that BAC

is a servicer but offering nothing to substantiate the same.  Opposing counsel's February 8, 2011

letter appears as Doc. No. 30 on the court's ECF system and is attached hereto as **Exhibit Q** .

The court as aforesaid did eliminate the name of BAC from the Order which appears as Doc. No.

31 on the court's ECF system and is attached hereto as **Exhibit R**.  Despite the clear issue raised

by the debtor to date, and more than 800 pages of documents disclosed, no servicing agreement

has been produced identifying BAC as a servicer.  This issue of the requirement for a servicer to

prove agency was decided in In re Guevara AP No. 08-03191 (Order on MSJ) upheld on appeal

CA No. 3-10-CV 545-F(N.D. Tex. 2010) (copies of Guevara Order and appellate decision are

attached hereto)

"Here, as a threshold matter, Wells Fargo must show that it is either the owner, holder or servicer of the note with authority of the owner to file a proof of claim on the owner's behalf. See In re Conde Dedonato, 391 B.R. 247 (Bankr. E.D.N.Y. 2008); see also In re Eads, 417 B.R. 728 Bankr. E.D. Tex. 2009; In re Nosek, 386 B.R. 374, 380 (Bankr. D. Mass. 2008). During the course of this proceeding Defendant has stated that it is not the owner, and although it argues it is the servicer with standing to pursue the proof of claim on file for Freddie Mac, it has not put any competent summary judgment evidence on this point to carry its burden of proof." In re Guevara AP No. 08-03191 (Order on MSJ p. 5) upheld on appeal CA No. 3-10-CV 545-F(N.D. Tex. 2010)

The Debtor in the instant case maintains that the Motion for Summary Judgment must fail for lack of standing of BAC to insert itself as a party to the debtor's Objection to Proof of Claim without any evidence of agency with the claimant, HSBC.

## IV.   TO PROVE ITS STANDING, CLAIMANT HSBC AS CLAIMANT AND BAC AS SERVICER FOR TRUST, AS MOVANT, ARE REQUIRED TO PROVE WHICH PARTY (IF ANY) IS THE HOLDER AND THAT THE HOLDER HAS THE RIGHT TO ENFORCE THE NOTE.

There is nothing in the record to indicate when or if the debtor's mortgage and note was ever transferred to HSBC the claimant, or otherwise transferred to the Trust.   In fact, the limited evidence to date indicates the opposite conclusion.  ( see Proof of Claim 5-1 Case Number 07-22223 and Affidavit of Jay Patterson, CFE re Itemization of Legal Documents, noting missing original Note)    It is BAC, a non-party movant that submits a note and mortgage and a purported assignment of the mortgage as evidence supporting its motion for summary judgment. The endorsement on the note is not sufficient to show that the claimant HSBC or the Trust was the holder of the Note at the time the proof of claim was filed  and the assignment is not sufficient to establish that either entity enjoyed the requisite holder status or that either entity was

an assignee of the mortgage when it filed the lift stay motion at issue before this court. These

simple facts are missing and cannot be presumed by this court and present a material fact at issue.

As a result, this court must find the BAC, HSBC and the Trust failed to meet their respective

burden and did not show that any party had constitutional or prudential standing to invoke the

jurisdiction of this court or to otherwise bring the motion for summary judgment.

"In the context of a claim objection, both the injury-in-fact requirement of constitutional standing
and the real party in interest requirement of prudential standing hinge on who holds the right to
payment under the Note and hence, the right to enforce the Note." In re Veal Case No. AZ 10-10
56, US Bankruptcy Appellate Panel of the Ninth Circuit (Decided June 10, 2011; copy attached)
a pg. 42 citing In re Weisband, 427 B.R. 13, 18-19(Bankr. D. Ariz. 2010). See also U-Haul, 793
F.2d at 1038 (holding that real party in interestis the "party to whom te relevant substantive law
grants a cause of action").

The movant's argument is misguided. The blank endorsement of a promissory note secured by

a mortgage on real property does not, by itself, confer on BAC or the claimant HSBC or the

Trust standing to seek any judicial relief from a federal court to enforce the note or to otherwise

complete foreclosure proceedings on the mortgage.

Under the Bankruptcy Code, as the party binging the claim, HSBC, must establish entitlement

to relief and constitutional standing under the "case or controversy" requirement of Article III, §

2 of the U.S. Constitution. This is "a threshold jurisdictional requirement." and cannot be

waived, or deemed moot.

In this case, if HSBC is to meet this jurisdictional requirement as an assignee of a claim,

HSBC must hold legal title to the claim. There is no expectation or presumption that as the legal

owner of a debt evidenced by a promissory note that HSBC has the right to enforce that debt

when the promissory note is a negotiable instrument. This is because a person who has an ownership right in a negotiable instrument might not be a person entitled to enforce the instrument.

This court still has a constitutional duty to inquire whether HSBC, BAC, or the Trust suffered sufficient injury to satisfy the "case or controversy" requirement of Article III as a threshold requirement to hearing Deutsche Bank's motion for relief from the stay.   If HSBC lacks Article III standing then this court lacks subject matter jurisdiction to hear HSBC's claim. If BAC lacks agency with the Trust and the Trust lacks Article III standing then this court lacks subject matter jurisdiction to hear its motion for summary judgment.

At a minimum this court must inquire whether HSBC is properly able to assert a foreclosure claim under state law. If HSBC and BAC and the Trust lack the legal right to enforce the debtor's mortgage debt under applicable substantive law, then both entities lack prudential standing before this court to bring a claim and seek to dismiss the debtor's objection thereto. If the parties suffered a sufficient injury to satisfy the jurisdictional standing requirement of Article III, but are not able to  satisfy the applicable prudential standing requirements, then HSBC as claimant and/or BAC as Movant cannot and did not state a claim upon which relief can be granted and the instant motion for summary judgment should be denied.

The Movant is misguided in presuming that it need nothing more than to claim that a party ( be it HSBC, BAC or the Trust) has possession of a note endorsed in blank without any explanation as to where it came from and without any explanation as to why it lacks a complete chain of endorsements as mandated by the PSA. New York State courts have routinely questioned such

blank endorsements and denied foreclosure at the state level. By way of example, OneWest

Bank FSB, produced an original Note endorsed in blank signed by IndyMac Bank, FSB but the

note lacked an endorsement the FDIC the only party from which One West could have acquired

the note. (See <u>OneWest Bank, FSB vs. Scott Cullen et al</u>, NYS Supreme Court, Ulster County, J.

Zwack Decision March 3, 2010. Copy attached).

Constitutional standing is the first step in the standing analysis. This court must also

determine whether the Claimant and /or Movant has prudential standing which requires an

inquiry into whether under New York law either party has a legal right to enforce the obligation

on which its claim is based at the time the claim was filed. This required constitutional,

prudential standing and jurisdictional analysis are missing in this case and these issues are never

moot.

Because a negotiable instrument represents the obligation to be enforced, the court has to

determine whether the parties ( ie., the Claimant and the Movant) has a legal right to enforce

the note under the Uniform Commercial Code. According to a recent draft report by the

Permanent Editorial Board for the Uniform Commercial Code, as cited by the Bankruptcy Court

in a recent order dismissing a motion for relief from stay in In re: DORIS JEAN JACKSON,

No. 11-20156-B-7, Eastern District of California, Sacramento Division, issued June 6, 2011 :

> [I]n the context of notes that have been sold or used as collateral to secure an
> obligation, the central concept for making that determination is identification of
> the 'person entitled to enforce' the note. Several issues are resolved by that
> determination. Most particularly:
> (i) the maker's obligation on the note is to pay the amount of the note to the
> person entitled to enforce the note,
> (ii) the maker's payment to the person entitled to enforce the note results in
> discharge of the maker's obligation, and
> (iii) the maker's failure to pay, when due, the amount of the note to the person
> entitled to enforce the note constitutes dishonor of the note.

. . . .

UCC Section 3-301 provides only three ways in which a person may qualify as the person entitled to enforce a note, two of which require the person to be in possession of the note (which, for this purpose, may include possession by a third party such as an agent):

[1.] The first way that a person may qualify as the person entitled to enforce a note is to be its "holder." This familiar concept, set out in detail in UCC Section 1-201(b)(21)(A), requires that the person be in possession of the note and either (i) the note is payable to that person or (ii) the note is payable to bearer. Determining to whom a note is payable requires examination not only of the face of the note but also of any indorsements. This is because the party to whom a note is payable may be changed by indorsement so that, for example, a note payable to the order of a named payee that is indorsed in blank by that payee becomes payable to bearer.

[2.] The second way that a person may be the person entitled to enforce a note is to be a "nonholder in possession of the [note] who has the rights of a holder."

[a.] How can a person who is not the holder of a note have the rights of a holder? This can occur by operation of law outside the UCC, such as the law of subrogation or estate administration, by which one person is the successor to or acquires another person's rights. It can also occur if the delivery of the note to that person constitutes a 'transfer' (as that term is defined in UCC Article 3, see below) because transfer of a note "vests in the transferee any right of the transferor to enforce the instrument." Thus, if a holder (who, as seen above, is a person entitled to enforce a note) transfers the note to another person, that other person (the transferee) obtains from the holder the right to enforce the note even if the transferee does not become the holder (as in the example below). Similarly, a subsequent transfer will result in the subsequent transferee being a person entitled to enforce the note.

[b.] Under what circumstances does delivery of a note qualify as a transfer? As stated in UCC Section 3-203(a), a note is transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." For example, assume that the payee of a note sells it to an assignee, intending to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee will not qualify as a holder (because the note is still payable to the payee) but, because the transaction between the payee and the assignee qualifies as a transfer, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the person entitled to enforce it. Thus, the failure to obtain the indorsement of the payee does not prevent a person in possession of the note from being the person entitled to enforce it, but demonstrating that status is more difficult. This is because the person in possession of the note must also demonstrate the purpose of the delivery of the note to it in order to qualify as the person entitled to enforce.

[3.] There is a third method of qualifying as a person entitled to enforce a note that, unlike the previous two methods, does not require possession of the note. This method is quite limited - it applies only in cases in which "the person cannot reasonably obtain possession of the instrument because the instrument was

destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." In such a case, a person qualifies as a person entitled to enforce the note if the person demonstrates not only that one of those circumstances is present but also demonstrates that the person was formerly in possession of the note and entitled to enforce it when the loss of possession occurred and that the loss of possession was not as a result of transfer (as defined above) or lawful seizure. If the person proves those facts, as well as the terms of the note, the person may enforce the note, but the court may not enter judgment in favor of the person unless the court finds that the maker is adequately protected against loss that might occur because if the note subsequently reappears. http://extranet.ali.org/directory/files/PEB_ Report_ on_Mortgage_Notes-Circulation_Draft. pdf

It is clear from the bankruptcy court records described herein above that during the entire time

Mr. Taylor was a debtor in Chapter 13 bankruptcy, case  number 07-22223, from March 2007

through April 2010,  Countrywide Home Loans Inc. and Fremont Investment and Loan claimed

ownership interest in the debtor's loan.  This in and of itself presents a material issue of fact as

the securitized trust claims it acquired the loan on some unknown date but presumably at a time

prior to the closing date of the trust, October 30, 2006.  In its rebuttal statement, the Movant

glosses over this bona fide dispute of material fact  and offers no documentary evidence or

testimony to begin to attempt to explain why Fremont and Countrywide Home Loans Inc.

claimed ownership and control for three years of an asset the Movant now says belonged to a

Trust. This presents a factual dispute.  Here the debtor avers that this issue of who is currently

holding the note and how it acquired the same requires an evidentiary hearing.  The Movant is

clearly not up to date with current SDNY caselaw as shown in its misguided statement, "The

Debtor's desperate attempts to avoid summary judgment by arguing that HSBC should be

required to account for the Note at each point in time since its execution is simply inconsistent

with the law.  All HSBC must prove to prevail is that it is the current holder of the debtor's note

and mortgage"( Statement  ECF Doc. No.52 pg. 4)  Nothing could be further from the truth.

In addition to the Cullen case cited above, the very recent case of In re Tandala Mims, BK Case

No. 10-14030 (SDNY) the court twice denied a Motion for Relief From Stay to Wells Fargo[7].

Mims as decided on October 27, 2010 ( here in after "Mims I" copy attached) is often cited in

SDNY and other bankruptcy courts across the country. What many of the citations omit is the

fact that there came a second decision denying relief from stay to Wells Fargo entered on

December 9, 2010 ( hereinafter "Mims II" copy attached). In Mims I the court ruled that "While

there is nothing that undermines the facial validity of the Mortgage, there are issues surrounding

the Assignment from MERS, as nominee for Lend America, to Wells Fargo. The September 13,

2010 Assignment suggests that it may have been executed simply for purposes of enabling Wells

Fargo to file a lift-stay motion. An assignment in anticipation of bringing a lift-stay motion does

not in and of itself indicate bad faith. However, **in the absence of a credible explanation,**

**describing how, when and from whom Wells Fargo derived its rights, relief from the stay**

**will not be granted."** ( Emph. Added) Mims I pg. 8   The purported creditor in Mims II came

back for a second try at pursuing a Motion for Relief From Stay, armed with an original Note

endorsed in blank[8]. The court again denied the relief requested stating, "With respect to the

Renewed Motion to lift the automatic stay, the Renewed Motion is denied …. The Court's

reasons for doing so are very simple. The October 27 Opinion sets forth the deficiencies in the

earlier motion to lift the automatic stay. While the Renewed Motion addresses *some* of the issues

raised in the prior opinion, not all of the issues have been satisfactorily addressed. With respect

to the assignment of the note and mortgage, the October 27 Opinion stated: "An assignment in

---

[7] It is worth noting that like BAC Home Loans Servicing LP in the instant case, Wells Fargo failed to ever produce a servicing agreement and thus could not be presumed an agent acting on behalf of the real party in interest.

[8] The undersigned as counsel of record in Mims II notes that while the decision in Mims II is silent as to Wells Fargo having possession of the original note, the same was represented via affidavit of John Kennerty in the moving party's papers. See Mims 10-14030 ( SDNY)ECF Doc No 20 Ex. 2 and the undersigned was invited to physically examine the same.

anticipation of bringing a lift-stay motion does not in and of itself indicate bad faith. However, in the absence of a credible explanation, *describing how, when and from whom Wells Fargo derived its rights, relief from the stay will not be granted.*" *Mims*, 438 B.R. at 57 (emphasis added).

In the instant case, there is no credible explanation by way of evidence *describing how, when and from whom* the claimant HSBC derived its rights. This remains a material issue of fact. The record is full of contradictions and no witness has been presented to decipher the same. Instead, the movant brushes the inconsistent proof of claim and multiple pleadings filed in Mr. Taylor's bankruptcy in a foot note stating, "The Debtor's citation to copies of the Note used in **other proceedings** is also meaningless because the original Note was not obtained for use in those proceedings."(emphasis added) (see Statement, ECF Doc No 52 pg. 7 FN4) This flies in the face of the requirements of FRBP 3001(c) "Claim based on a writing. When a claim, or an interest in property of the debtor securing the claim is based on a writing, the original or a duplicate shall be filed with the proof of claim." The term "duplicate" is defined in FRE as follows:

> FRE 1001 (4) Duplicate. A "duplicate" is a **counterpart produced by the same impression as the original,** or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which **accurately reproduces the original.**"

The proof of claim filed in both 07-22223 and 10-22652 attached identical unendorsed notes both held out to be duplicates of the original as per FRBP 3001(c). Is the movant suggesting the claimants each bankruptcy defied FRBP 3001(c) and if so where is the evidence of that? There is a further material question of fact as to exactly who is holding the debtors note and mortgage and who has the right to enforce the same. If BAC could prove itself a servicer, it

must still prove the validity of the the standing and calim brought by the claimant. Absent a

valid assignment and no proof of physical delivery to the claimant, it lacks standing. As stated

before, documents produced by the Movant include an inventory checklist identifying documents

contained in a collateral file as of June 6, 2006. The Note is specifically excluded ( see Patterson

Affidavit and a copy attached hereto as **Exhibit S**) Now that the Movant has possession of a

note with a "new and improved" rubber stamped endorsement on the backside of a Note, which

was never proven to be delivered to HSBC or the Trust in the first place and suddenly appears

inside a collateral file that went missing for 25 days ( see Tala Renzai aff and Affidavit of Jay

Patterson, CFE) with no explanation as to how or when the endorsement was stamped on the

back or how and when the Note made it into the collateral file , the Movant asserts that it's the

undersigned who is reaching. Opposing counsel has a very short memory as it seems a shot

heard around the bankruptcy world came from the November 16, 2010 decision of Kemp v

Countrywide 440 **B.R. 624** that revealed the former Countrywide Home Loans Inc. not only did

not deliver Notes and loan documents to trusts as a matter of practice, but post-petition actually

doctored allonges to falsify endorsements. The revelation came with the testimony of Linda

DeMartini, an employee of "Bank of America Home Loans formally known as Countrywide

Home Loans " A copy of the hearing transcript of Ms. DeMartini's testimony is attached hereto

as Exhibit T. ( see DeMartini hearing transcript. Pg. 3 ln. 9-10) The decision in Kemp notes that

Ms. DeMartinit "testified that to her knowledge, the original note at issue never left the

possession of **Countrywide Home Loans Inc.** , and that the original note appears to have been

transferred to **Countrywide's** foreclosure unit, as evidenced by internal FedEx tracking numbers.

She also confirmed that the new allonge had not been attached or otherwise affixed to the note.

She testified further that it was customary for Countrywide to maintain possession of the

original note and related loan documents." Kemp 628-629 ( emphasis added)

Clearly, the internal policies and procedures of not delivering loan documents to Trusts and

forging allonges described in the Kemp case was not an isolated incident. According to Ms

DeMartini, retaining original loan documents and manufacturing allonges was business as usual

at Bank of America Home Loans formally known as Countrywide Home Loans Inc. The debtor

avers that the known history of the misguided internal policies and procedures of both

Countrywide Home Loans Inc. and its successor, ( see Demartini Trans. and Michelle Card

Trans.) gives rise to questions of genuiness and reliability of the purported rubber stamp

endorsement. After all, given the facts of the instant case with Countrywide Home Loans Inc.

first identifying itself as the creditor in a proof of claim in Mr. Taylor's 2007 case and then

identifying "Fremont Investment and Loan c/o Countrywide Home Loans Inc" as the creditor in

subsequent pleading filed in Mr. Taylor's case coupled with the lesson learned by Bank of

America regarding bogus allonges in Kemp, why would it be so far fetched for the debtor to

demand proof the endorsement is authentic and evidence that the note was ever physically

transferred to and held by HSBC, the claimant or the Trust?

## DID THE FAILURE TO REGISTER THE DEBTOR'S MORTGAGE WITH MERS SEPARATE THE NOTE FROM THE MORTGAGE?

While the issue of who holds the note remain in dispute, the elephant in the room also ignored by

the Movant is the lack of ability for MERS to act as nominee if the debtor's loan was not

registered with MERS and therefore the lack of any proof the Mortgage was ever transferred to

the Claimant HSBC or Trust. This too remains a material fact in dispute. Ironically, the only

document attached to the proof of claim[9] identifying a transfer to the securitized trust is a MERS assignment of mortgage which the Movant cannot and does not even begin to explain.[10] The assignment of Mortgage to the Trust on its face is flawed for a number of reasons, perhaps all significant, but the arguably biggest issue for the Claimant and the Movant to over come is the potential separation of the Mortgage from the Note. To recap, the debtor's mortgage identifies "MERS" as a nominee for the Lender, Fremont Investment and Loan. The basic mechanics of MERS requires the subject loan be registered, but for whatever reason, the evidence to date indicates the Debtor's loan was not registered with MERS. So what is the effect of a mortgage which identifies MERS as a nominee and mortgagee for recording purposes and which is recorded on the land records, for some reason, never gets registered with MERS? Can the Mortgage ever be transferred by and among MERS members? What if, as in the case at bar, the assignment does not state the mortgage is being transferred by a successor or assign of the originating lender? Again, all material facts in dispute. The MERS assignment at bar, purports to transfer the Debtor's Note and Mortgage TWO (2) years after the demise of the Assignor, Fremont Investment and Loan.[11] This begs the question of exactly whose direction Ms. Schnaufer acted under purporting to be an officer of MERS acting as a nominee for a company which did not exist. While opposing counsel will dismiss the lengthy discussion of MERS in the case of In re Ferrell Agard BK EDNY (February 10, 2011) (copy attached) as mere dicta, the

---

[9] The Debtor reiterates that a letter was served on the counsel filing to the proof of claim describing concerns about the documents and subsequently posted on ECF. Despite all the warning of abundance of issues prior to the filing of the Debtor's objection, still, the proof of claim was never amended

[10] The debtor notes that while the Movant laughs off the assignment now as "immaterial" it continues to advocate for its authenticity and does not withdraw the document from the record. As further stated herein below, the recording of false documents on the land records in New York State is a felony.

[11] The Debtor calls the Court's attention to fact that the purported assignment seeks to transfer an asset of an entity, —Fremont Investment & Loan‖ According to the FDIC website Fremont Investment & Loan is an inactive institution since July 25, 2008. The screen shot from the FDIC website is can be viewed online at    http://www2.fdic.gov/idasp/main.asp

undersigned notes that this court in at least one hearing, tipped its hand to share his agreement

with the Agard Court:

> Judge Robert D. Drain:"…I doubt that either side
> took into account the issues dealt with by Judge
> Grossman recently in the Agard case. I may
> instruct you all to deal with those issues. I
> think that in advance of that, both sides should
> consider those issues, and consider them – and
> factor them into what they've already factored
> into the settlement discussion. I have to say I
> think it's a very well reasoned opinion. And the
> issue that is, I think, potentially most
> troubling for the Creditor here, is whether in
> fact if the note effectively got separated from
> the mortgage, because MERS never got instructions,
> which Judge Grossman says, and it makes sense
> from his logic at least, they need to get in
> order to transfer. So if MERS didn't get the
> instructions to transfer, and just did it on its
> own, therefore separating the note and the
> mortgage, I think there's a substantial issue
> about avoidance. I don't know whether you
> factored that into  your discussions.
>
> There's a second issue, which is if it's
> physically impossible to get those instructions
> today, whether the transfer is in effect a
> nullity, and always will be. An agent can always
> get subsequent instructions, normally.  That's I
> guess the saving grace for MERS. But if the
> bankruptcy intervened before those instructions,
> or if as a practical matter that can't be given
> because the original holder doesn't exist anymore,
> then I think that the Lender may have a real
> issue.
>
>    And the fundamental point Judge Grossman makes
> is that the MERS system only works if MERS is an
> agent, because, if it isn't, the note and the
> mortgage are separate from the very beginning.
> But if it is an agent, then it can't just
> transfer on its own. It needs to have
> instructions. So anyway, I am going to go to the
> transcript.  I'll let you know whether I need
> that extra briefing or not, or whether I can just

```
issue a decision. But in the meantime, I really
encourage you all to this one thing to settle on
a loan modification based on the value of the
house when there are issues as to whether the
lender even has a mortgage in the first place."
(See In re Kurland 09-24425 (SDNY) Transcript pg.
4 ECF. Doc. No. 21)
```

The Movant has not withdrawn the questionable MERS assignment and while on the one hand

BAC argues that the MERS assignment is "immaterial", it simultaneously digs its heels in the

ground advocating for the validity of the MERS assignment. The Movant cannot have it both

ways. The issue now at bar becomes avoidance of lien altogether, in that even if arguendo the

Note is found to have transferred to the Trust or to the Claimant(HSBC), the Mortgage securing

the Note did not, additional testimony and discovery is required.

Respectfully Submitted,

/s/ LINDA M. TIRELLI
Linda M. Tirelli, Esq.
Law Offices of Linda M. Tirelli, PC
One North Lexington Ave., 11th Fl
White Plains, NY 10601
Phone: (914)946-0860
Fax: (914)946-0870
Email: WestchesterLegal@aol.com